**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK TOPLEY,<br><br>　　　　　　Plaintiff,<br><br>　　-against-<br><br>SEMGROUP CORPORATION, CARLIN G. CONNER, THOMAS R. MCDANIEL, KARL F. KURZ, RONALD A. BALLSCHMIEDE, JAMES H. LYTAL, SARAH M. BARPOULIS, and WILLIAM J. MCADAM,<br><br>　　　　　　Defendants. | Case No. 1:19-CV-9630-RA |
| BARB HILLS,<br><br>　　　　　　Plaintiff,<br><br>　　-against-<br><br>SEMGROUP CORPORATION, CARLIN G. CONNER, THOMAS R. MCDANIEL, KARL F. KURZ, RONALD A. BALLSCHMIEDE, JAMES H. LYTAL, SARAH M. BARPOULIS, and WILLIAM J. MCADAM,<br><br>　　　　　　Defendants. | Case No. 1:19-CV-10412-RA |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**</u>

Dated: July 16, 2020

**ADEMI & O'REILLY, LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
　　　jfruchter@ademilaw.com

*Attorneys for Plaintiff Topley*

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
　　　mschreiner@monteverdelaw.com

*Attorneys for Plaintiffs Topley and Hills*

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................................... 3

III.  PLAINTIFFS' COUNSEL ARE ENTITLED TO THE REQUESTED FEE AWARD
UNDER THE COMMON BENEFIT DOCTRINE .................................................... 5

   A.   The Applicable Law ................................................................................ 5

   B.   The Supplemental Disclosures Provide a Substantial Benefit ......................... 10

      1.   SemGroup's and ET's financial projections. ............................... 10

      2.   Jefferies' valuation analyses. ................................................... 13

      3.   Conflicts of interest. ............................................................... 13

   C.   The Requested Fee Award Is Reasonable ......................................... 14

      1.   The time and labor required. ................................................... 15

      2.   The customary fees in similar cases ......................................... 17

      3.   The skill requisite to perform the legal service properly, the novelty and difficulty of
the question presented by the case, the preclusion of other employment, and time
limitations imposed by the circumstances. ................................................. 18

      4.   The experience, reputation, and ability of the attorneys. ............................. 19

      5.   A reasonable multiplier is appropriate because Plaintiffs' Counsel undertook
representation on a contingent basis. ......................................................... 21

IV.  THE FEE AWARD IS ALSO SUPPORTED UNDER STATE LAW ............................... 23

V.   CONCLUSION ........................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Pages(s)**

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*,
  54 F.3d 69 (2d Cir. 1995) ……………………………………………….... 7, 14, 23

*In re AOL Time Warner S'holder Derivative Litig.*,
  No. 02 Civ. 6302 (CM), 2009 U.S. Dist. LEXIS 124372, 2010 WL 363113 ................. 14, 15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
  493 F.3d (2d Cir. 2007) ........................................................................................... 14

*Arnold v. Soc'y for Sav. Bancorp*,
  650 A.2d 1270 (Del. 1994) ........................................................................................ 14

*Aron v. Crestwood Midstream Partners LP*,
  No. 4:15-CV-1367, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016) ................... 17

*Azar v. Blount Int'l, Inc.*,
  No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2012) ........................ 11

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................... 22

*Blau v. Rayette-Faberge, Inc.*,
  389 F.2d 469 (2d Cir. 1968) ................................................................................... 8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................. 5

*Cal-Maine Foods, Inc. v. Pyles*,
  858 A.2d 927 (Del. 2004) ................................................................................... 23, 24

*Campbell v. Transgenomic, Inc.*,
  916 F.3d 1121 (8th Cir. 2019) ................................................................................ 9, 11

*In re Celera Corp. S'holder Litig.*,
  No. 6304-VCP, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012) ................................... 13

*Chen v. Select Income REIT*,
  No. 18-CV-10418, 2019 U.S. Dist. LEXIS 177687, 2019 WL 6139014
  (S.D.N.Y. Oct. 11, 2019) ...................................................................................... 7, 9

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, 2014 WL 1883494 .... 16, 21

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................... 18

*Comeaux v. Seventy Seven Energy, Inc.*,
  No. CIV-17-191-M, 2018 U.S. Dist. LEXIS 220373 (W.D. Okla. Feb. 26, 2018) ............... 5

*Cooperstock v. Pennwalt Corp.*,
  820 F. Supp. 921 (E.D. Pa. 1993) .................................................................... 9, 10

*In re Del Monte Foods Co. S'holders Litig.*,
  No. 6027-VCL, 2011 WL 1677458, 2011 Del. Ch. LEXIS 94 ........................................... 24

*Denton v. Pennymac Loan Servs., L.L.C.*,
  252 F. Supp. 3d 504 (E.D. Va. 2017) ................................................................... 19

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ......................................................................... 15, 22

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
  No. 98 CV 4318 HB, 2001 WL 709262, 2001 U.S. Dist. LEXIS 8418 ............................... 22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 WL 2230177, 2007 U.S. Dist. LEXIS 57918 ..................... 22

*In re Flag Telecom Holdings*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, 2010 U.S. Dist. LEXIS 119702 .......... 18

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574 ................................................... 21

*In re Golden State Bancorp Inc. Shareholders Litig.*,
  No. 16175, 2000 WL 62964, 2000 Del. Ch. LEXIS 8 (Del. Ch. Jan. 7. 2000) ................... 24

*Hall v. Cole*,
  412 U.S. 1 (1973) ........................................................................................ 6

*Hamil v. Ambry Genetics Corp.*,
  No. 2017-0587-AGB, 2019 Del. Ch. LEXIS 584 (Del. Ch. Jan. 9, 2019) ..................... 12, 17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417, 2014 U.S. Dist. LEXIS 177175 ..................... 16

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ..................................................................................... 5

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ....................................................................... 14, 15

*Kahan v. Rosenstiel*,
  424 F.2d 161 (3d Cir. 1970) ........................................................................... 8

*Karp v. First Conn. Bancorp, Inc.*,
   No.: RDB-18-2496, 2019 U.S. Dist. LEXIS 162819, 2019 WL 4643799
   (D. Md. Sept. 24, 2019) ............................................................................................ 9, 12

*Kinney v. International Brotherhood of Electrical Workers*,
   939 F.2d 690 (9th Cir. 1991) ........................................................................................ 15

*Kopet v. Esquire Realty Co.*,
   523 F.2d 1005 (2d Cir. 1975) ......................................................................................... 7

*Koppel v. Wien*,
   743 F.2d 129 (2d Cir. 1984) .................................................................................... 7, 8, 9

*La. State Emps. Ret. Sys. v. Citrix Sys.*,
   No. 18298, 2001 Del. Ch. LEXIS 115 (Del. Ch. Sept. 17, 2001) ......................................... 23

*Lane v. Page*,
   862 F. Supp. 2d 1182, 1255 (D.N.M. 2012) ..................................................................... 6

*Lewis v. Gen. Emp't Enters., Inc.*,
   No. 91 C 0291, 1991 WL 125993, 1992 U.S. Dist. LEXIS 5464 (N.D. Ill. Apr. 10, 1992) .... 8

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................... 15, 22

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
   11 A.3d 1175 (Del. Ch. 2010) ............................................................................... *passim*

*McCafferty v. Local 254, SEIU*,
   186 F.3d 52, 62 (1st Cir. 1999) .................................................................................... 15

*McKittrick v. Gardner*,
   378 F.2d 872 (4th Cir. 1967) ....................................................................................... 21

*Mendell v. Greenberg*,
   927 F.2d 667 (2d Cir. 1990) ........................................................................................ 11

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................................. 16, 18

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ............................................................................................. *passim*

*In re Netsmart Techs., Inc. S'holders Litig.*,
   924 A.2d 171 (Del. Ch. 2007) ...................................................................................... 11

*Nguyen v. Barrett*,
   C.A. No. 11511-VCG, 2016 Del. Ch. LEXIS 147 (Del. Ch. Sept. 28, 2016) ...................... 18

*Nichting v. DPL Inc.*,
   No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739 (S.D. Ohio July 15, 2011) .................. 11, 17

*Perez v. AC Roosevelt Food Corp.*,
   744 F.3d 39 (2d Cir. 2013) ....................................................................................... 14

*In re Pure Res. S'Holders Litig.*,
   808 A.2d 421 (Del. Ch. 2002) .................................................................................. 13

*Reiser v. Del Monte Properties Co.*,
   605 F.2d 1135, 1140 (9th Cir. 1979) .......................................................................... 6

*Republic Technology Fund, Inc. v. Lionel Corp.*,
   483 F.2d 540 (2d Cir. 1973) ....................................................................................... 1

*Rosenbaum v. MacAllister*,
   64 F.3d 1439 (10th Cir. 1995) .................................................................................... 5

*In re Sauer-Danfoss Inc. S'holders Litig.*,
   65 A.3d 1116 (Del. Ch. 2011) .................................................................................. 25

*Savoie v. Merchants Bank*,
   84 F.3d 52 (2d Cir. 1996) .......................................................................................... 9

*In re Schering-Plough/Merck Merger Litig.*,
   No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) ........... 7, 21

*In re Talley Indus., S'holders Litig.*,
   No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998) ............................................ 10

*Tandycrafts, Inc. v. Initio Partners*,
   562 A.2d 1162 (Del. 1989) ................................................................................... 6, 23

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................. 16, 22

*U.S. Supreme Court Emulex Corp. v. Varjabedian*,
   139 S. Ct. 1407 (2019) ............................................................................................ 19

*United States v. Smith*,
   155 F.3d 1051 (9th Cir. 1998) .................................................................................. 12

*United Vanguard Fund v. TakeCare, Inc.*,
   693 A.2d 1076 (Del. 1997) ....................................................................................... 23

*Varjabedian v. Emulex Corp.*,
   888 F.3d 399 (9th Cir. 2018) .................................................................................... 19

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ............................................................... 19

*Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*,
 No. 76 Civ. 2125 (RWS), 2005 WL 736146, 2005 U.S. Dist. LEXIS 5200 ........................ 16

*Yablonski v. United Mine Workers*,
 466 F.2d 424 (D.C. Cir. 1972) ................................................................. 8

*In re Xoom Corp. Stockholder Litig.*,
 No. 11263-VCG, 2016 WL 4146425, 2016 Del. Ch. LEXIS 117
 (Del. Ch. Aug. 4, 2016) ...................................................................... 24

*Zirn v. VLI Corp.*,
 681 A.2d 1050 (Del. 1996) ................................................................... 14

**Other**

17 C.F.R. § 230.425 .............................................................................. 4

*In Focus: Billing; A Firm-by-Firm Sampling of Billing Rates Nationwide*,
 NAT'L LAW JOURNAL, December 6, 2004 ....................................................... 16

## I.    PRELIMINARY STATEMENT

Plaintiffs Mark Topley and Barb Hills ("Plaintiffs") through undersigned counsel, respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees and expenses in the amount of $400,000 (the "Fee Award").

The above captioned-actions (the "Actions") challenged the veracity of the definitive proxy statement (the "Proxy[1]") which Defendants used to solicit shareholders to vote on the acquisition of SemGroup Corporation ("SemGroup" or the "Company") by Energy Transfer LP ("ET") as approved by Defendants on September 15, 2019 (the "Transaction").

In authorizing the Proxy, Defendants omitted vital information—which Plaintiffs obtained for shareholders by procuring the Supplemental Disclosures (as defined below)—including the projected 2019-2022 Distributable Cash Flow for ET, which is the most important financial metric available to shareholders when confronted with a decision to accept consideration for their shares in exchange for diluting their positions in a company and/or accepting cash. It is long-standing precedent in this Circuit that "perhaps nothing is more relevant to a vote on whether or not to approve a merger than the earnings picture of the acquiring company, at least to the stockholder of the company being acquired." *Republic Tech. Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 547 (2d Cir. 1973).

Defendants also omitted—and again, Plaintiffs obtained—the 2023-2024 financial projections SemGroup. This metric was necessary for Jefferies LLC ("Jefferies") to create the financial analyses supporting its fairness opinion, and not coincidentally, the omitted years revealed tremendous growth in EBITDA and Cash Available for Dividends. Furthermore, Plaintiffs obtained material information concerning all metrics which Jefferies utilized in its

---

[1]        The Proxy was issued and mailed to SemGroup shareholders on October 30, 2019.

financial analyses, as well as notable background information to the merger.

In short, the information obtained by Plaintiffs, especially the cash flow projections, was fundamental for shareholders to value their holdings and make their determination whether the consideration offered was fair. *See, e.g., Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010) (explaining that "under sound corporate finance theory, the value of stock should be premised on the expected future cash flows of the corporation," and enjoining the shareholder vote until cash flow projections were disclosed). Armed with the Supplemental Disclosures (as defined below) SemGroup shareholders were able to fully assess the fairness of the Transaction and cast an informed vote on December 4, 2019 (the "Shareholder Vote").

Plaintiffs and their counsel have therefore conferred a substantial benefit upon SemGroup shareholders, entitling Plaintiffs' counsel to an award of fees and expenses. *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 396 (1970). Awards in the amount requested by Plaintiffs are routinely awarded in the interests of equity and economy. For example, just about six weeks ago, Judge Ray from the Northern District of Georgia awarded $437,500 to Plaintiffs' counsel for similar disclosures obtained for Arris International shareholders. *See Uzun v. Arris Int. Inc.*, Case No. 18-CV-05555-WMR (N.D. Ga. May 27, 2020) (Declaration of Juan E. Monteverde ("JEM Dec."), Exhibit D). The same result is warranted here.

Plaintiffs have exercised reasonable and diligent efforts to meet and confer with Defendants' counsel to negotiate an award of attorney's fees, but to no avail. Plaintiffs held off filing this motion in mid-March when the COVID-19 Pandemic spread across the United States. Since then, Plaintiffs have offered to confer with Defendants' counsel as recently as late-June yet received no response. It is clear that Plaintiffs' only remedy to be compensated for their efforts is

to seek judicial relief. Accordingly, this motion follows, and the Fee Award should be granted.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2019, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with ET, pursuant to which, SemGroup's shareholders received a combination of (i) $6.80 in cash, without interest (the "Cash Consideration"), and (ii) 0.7275 of a common unit representing a limited partner interest in ET (the "Exchange Ratio" and together with the "Cash Consideration," the "Merger Consideration").

On October 3, 2019, the Defendants authorized the filing of a materially incomplete and misleading S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC"). Thereafter, on October 30, 2019, Defendants caused the filing of the materially incomplete and misleading Proxy with the SEC that scheduled the Shareholder Vote. Both the Registration Statement and later the Proxy omitted or misrepresented material information which prevented shareholders from assessing the fairness of the Transaction, omissions which included the 2019-2022 projections for ET and 2023-2024 financial projections for SemGroup.

Following the issuance of the Registration Statement, Plaintiffs sought counsel to investigate the fairness of the Transaction and to obtain the material information which was omitted.

On October 18, 2019, Plaintiff Mark Topley filed his complaint alleging the Registration Statement violated the Securities Exchange Act of 1934 ("Exchange Act") and seeking to enjoin Defendants from holding the anticipated Shareholder Vote until the deficiencies in the Registration Statement were corrected (the "Topley Complaint"). Thereafter, on November 8, 2019, Plaintiff Barb Hills filed a substantially similar complaint once the Proxy was issued, as it

set the date for the Shareholder Vote (the "Hills Complaint" together with the Topley Complaint, the "Complaints").

Sensitive of the time and costs involved in this litigation, Plaintiffs sought to obtain the material information at issue before circumstances necessitated the filing of a preliminary injunction motion. Plaintiffs sent Defendants a memorandum of law supporting the claims asserted in the Complaints (the "Demand Letter"). At the same time, Plaintiffs were preparing a motion for preliminary injunction to seek to enjoin the Shareholder Vote should disclosures not be forthcoming. Perhaps recognizing the materiality of the omissions, in the days thereafter, Defendants indicated they would concede to Plaintiffs' demands and so avoided the necessity of a preliminary injunction motion.

On November 22, 2019, Defendants provided a draft of the proposed disclosures to be made in accordance to the demands in the Actions. On November 23, 2019, Plaintiffs agreed to drop their Actions as moot if Defendants made the proposed disclosures, while reserving their rights to seek an award of attorneys' fees.

On November 27, 2019, Defendants filed a Form 8-K[2] with the SEC containing the agreed upon supplemental disclosures, which disclosed the material information at issue in the actions (the "Supplemental Disclosures"). *See* JEM Dec., Exhibit A.

Plaintiffs then dismissed their respective Actions pursuant to their agreements with Defendants' counsel, obviating the need to enjoin the Transaction. In other words, Plaintiffs' litigation efforts "provide[d] a necessary supplement to Commission action[,]" which was the very reason the Supreme Court held stockholders have a private right of action under Section

---

[2]     The Form 8-K was also intended to simultaneously satisfy the filing obligation of the registrant written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425).

14(a). *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (noting that the SEC examines thousands of "proxy statements annually and each of them must necessarily be expedited. Time does not permit an independent examination of the facts set out in the proxy material.").[3]

In the aftermath of the Shareholder Vote, Plaintiffs attempted to negotiate a reasonable award of fees and expenses for the Supplemental Disclosures procured by Plaintiffs. Defendants have refused to discuss a fee resolution.

Accordingly, this motion follows, and the requested Fee Award should be granted.

## III.    PLAINTIFFS' COUNSEL ARE ENTITLED TO THE REQUESTED FEE AWARD UNDER THE COMMON BENEFIT DOCTRINE

For their determined effort to ensure that the Supplemental Disclosures were issued to promote an informed vote on the Transaction, Plaintiffs' Counsel are entitled to the Fee Award under federal law. *See, e.g., Comeaux v. Seventy Seven Energy, Inc.*, No. CIV-17-191-M, 2018 U.S. Dist. LEXIS 220373 (W.D. Okla. Feb. 26, 2018), holding:

> The award of attorney's fees to plaintiffs in class action and derivative suits is based upon the common benefit doctrine, an exception to the American rule litigants must that prevailing pay their own attorneys' fees. It applies where the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.

*Id.* at 2 (quoting *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 n.3 (10th Cir. 1995).

### A.    The Applicable Law

Courts have long permitted counsel who create a benefit for others to recover their expenses, including reasonable attorneys' fees, from those who enjoy the benefit conferred. *See e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills*, 396 U.S. at 394-95. An award

---

[3]      All internal citations and punctuation have been omitted and all emphasis added unless otherwise noted.

of reasonable attorneys' fees and expenses is appropriate when counsel's efforts confer a "substantial" or "common" benefit on the members of an ascertainable class and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. *Mills*, 396 U.S. at 396.[4] In *Mills*, the Supreme Court held that vindicating Section 14's statutory policy of "informed corporate suffrage" confers a substantial benefit upon stockholders sufficient to warrant awarding attorneys' fees:

> In many suits under § 14 (a) . . . it may be impossible to assign monetary value to the benefit. Nevertheless, the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders . . . [P]rivate stockholders' actions of this sort involve corporate therapeutics, and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.

*Id.*[5]

---

[4]    Although the beneficiaries must be an ascertainable class, the substantial benefit doctrine does not require the benefit to result from a class action. *Reiser v. Del Monte Properties Co.*, 605 F.2d 1135, 1140 (9th Cir. 1979) ("Imposition of a class action requirement would be inconsistent with the equitable foundations of the exception. In both the common fund and common benefit cases, the Court has refused to place form over substance, focusing instead on the actual effect of a plaintiff's suit."); *accord Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1166 (Del. 1989) (upholding the award of attorneys' fees where "the shareholder commences an individual action with consequential benefit for all other members of a class, or for the corporation itself . . . .").

[5]    The *Mills* Court further explained that requiring a corporation to pay plaintiff's attorneys' fees is the proper way to spread the costs proportionately among the benefitting shareholders, as doing so "is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." 396 U.S. at 396-97. *See also Lane v. Page*, 862 F. Supp. 2d 1182, 1255 (D.N.M. 2012) ("[C]ourts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in corporation's favor."); *Hall v. Cole*, 412 U.S. 1, 7 (1973) ("Under these circumstances, reimbursement of the plaintiffs' attorneys' fees out of the corporate treasury simply shifted the costs of litigation to the class that has benefited from them and that would have had to pay them had it brought the suit.").

Since *Mills*, it has become "well established that non-monetary benefits, such as promoting fair and informed corporate suffrage . . . may support a fee award." *Koppel v. Wien*, 743 F.2d 129, 134-135 (2d Cir. 1984); *see also Kopet v. Esquire Realty Co*., 523 F.2d 1005, 1008 (2d Cir. 1975) (finding a fee award warranted where litigation caused the company to disclose financial information). The Second Circuit has specifically held that procuring equitable relief under the Exchange Act serves as a basis for a fee request. *See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995) (finding the "common-benefit rationale often is applied in suits by a group of shareholders against a corporation to vindicate some substantial right of all the shareholders of the company" and holding "that the promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue.").[6] More specifically, courts routinely find that disclosures—substantially similar to those obtained here—confer a substantial benefit to shareholders preparing to vote on a merger transaction. *See Uzun v. Arris Int. Inc.*, Case No. 18-CV-05555-WMR (N.D. Ga. May 27, 2020) (JEM Dec., Ex. D); *see also Chen v. Select Income REIT*, 2019 U.S. Dist. LEXIS 177687 (S.D.N.Y. Oct. 11, 2019).

The award of Plaintiffs' attorney's fees is encouraged "because no judgment or consent decree was entered, and the complaint was dismissed as moot. Fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained." *Koppel*, 743 F.2d at 135. Courts often award attorneys' fees where

---

[6]    *See also In re Schering-Plough/Merck Transaction Litig*.,, 2010 WL 1257722, 2010 U.S. Dist. LEXIS 29121, at *49 (D.N.J. Mar. 25, 2010) (awarding $3.5 million attorney's fee in disclosure-based settlement where "the supplemental disclosures facilitated communication and informed shareholders of previously undisclosed material information permitting shareholders to exercise their voting rights accordingly").

the need for further litigation becomes moot because of resolutions resulting from arrangements

and communications between the parties. *See, e.g.*, *Blau v. Rayette-Faberge, Inc*., 389 F.2d 469,

474 (2d Cir. 1968) (granting fees following a pre-litigation demand letter and filing of a

company); *see also  Kahan v. Rosenstiel*, 424 F.2d 161, 164, 175 (3rd Cir. 1970) (allowing

attorneys' fees and expenses following the filing of a complaint). "Indeed, in *Mills* attorney's

fees were awarded to the plaintiffs although it was not yet determined what relief if any plaintiffs

could obtain." *Kahan*, 424 F.2d at 167.  As the D.C. Circuit explained in *Yablonski v. United*

*Mine Workers*:

> The Supreme Court in *Mills* [] noted that the relevant inquiry is not into
> the technical posture of the litigation, but whether it has conferred a
> substantial benefit on the members of an ascertainable class…As all
> lawyers know, a lawsuit does not always have to go to final adjudication
> on the merits in order to be effective. Assuming the effectiveness in terms
> of practical results, the litigating stage attained is relevant only to the
> amount of the fees to be allowed, and not to the issue of whether they
> should be awarded at all.

466 F.2d 424, 431 (D.C. Cir. 1972).

Finally, in connection with such a claim, ***Defendants*** "bear the burden of production and

persuasion on the issue of causation. Where, as here, plaintiffs' lawsuit is mooted by defendants'

corrective action, the burden properly shifts to defendants to establish the absence of a causal

connection in order to defeat a claim for legal fees." *Koppel*, 743 F.2d at 135. The common

benefit does not need to flow ***solely*** from this litigation for Plaintiffs' Counsel to be entitled to

recover an award of attorney's fees and expenses.[7] Accordingly, to meet their burden,

---

[7]     Notably, "[f]or a causal connection to be established, the lawsuit need not have been the
only possible cause or even the primary cause of the corporation's actions."  *Lewis v. Gen. Emp't
Enters., Inc*., No. 91 C 0291, 1991 WL 125993, 1992 U.S. Dist. LEXIS 5464, at *11 (N.D. Ill.
Apr. 10, 1992). "Rather, the lawsuit need only have been a ***contributing cause*** of the corporate
benefit. In short, to meet their burden, defendants essentially are required to persuade this Court

Defendants must persuade this Court that the Actions were not a factor in their decision-making and subsequent conduct. *See Koppel*, 743 F.2d at 135.

Plaintiffs' Actions conferred a substantial benefit on SemGroup shareholders through their prosecution of the Actions causing Defendants to issue the Supplemental Disclosures. Any argument by Defendants that Plaintiffs were not a cause of the Supplemental Disclosures would strain credulity, as the Supplemental Disclosures mirror Plaintiffs' claims in their Complaint. *Ex* Ex. A to JEM Dec. *with* ECF No. 1 for either of Plaintiffs' Actions. Moreover, Plaintiffs' Counsel have recently defeated motions to dismiss for similar omissions of financial projections. *See e.g., Karp v. First Conn. Bancorp, Inc.*, 2019 U.S. Dist. LEXIS 162819, 2019 WL 4643799 (D. Md. Sep. 24, 2019) (denying a motion to dismiss Section 14(a) claim premised on failure to disclose cash flow projections*); Select Income*, 2019 U.S. Dist. LEXIS 177687 at *43 (finding similar disclosures "provided material information necessary for [the company's] common stock shareholders to cast an informed vote concerning the Transaction."); *Campbell v. Transgenomic*, Inc., 916 F.3d 1121, 1125 (8th Cir. 2019). Defendants faced real risk if they proceeded to the Shareholder Vote without disclosing the fundamental information shareholders ought to have in any merger, projections. Simply put, Plaintiffs zealously advocated for the vindication of SemGroup shareholders' rights and caused the Defendants to issue the Supplemental Disclosures.[8]

---

that the lawsuit was not a factor in their decision-making and subsequent conduct." *Id.* at *11 (emphasis added).

[8] Although a showing of meritorious claim is not required for attorneys' fees in the Second Circuit, *Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996) ("In addition to a causal connection, some Circuits have required a showing that the complaint has sufficient merit to survive a motion to dismiss, before they will award fees when a case has been mooted. This Court has not imposed that additional requirement, and we decline to do so now."), to the extent Defendants attempt to raise the specious argument, "'[i]t is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope.'"

### B.      The Supplemental Disclosures Provide a Substantial Benefit

Courts have long recognized the value of corrective disclosures like those at issue here. *See, e.g.*, *Cooperstock*, 820 F. Supp. at 924 (citing *Mills*, 396 U.S. at 394-96) ("The 'substantial benefit' requirement [] has been interpreted broadly and has been held to include pecuniary as well as nonpecuniary gains."). Indeed, timely, meaningful disclosures like the Supplemental Disclosures can provide greater benefit to shareholders than money damages, because additional information is "presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process." *In re Talley Indus., Inc. S'holders Litig.*, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 9, 1998). As outlined below, Plaintiffs' prosecution of the Actions conferred to SemGroup shareholders the substantial benefit of the disclosure of the following material information.

#### 1.    SemGroup's and ET's financial projections.

First, the Supplemental Disclosures provided cash flow projections—fundamentally the most important metric shareholders use to assess the adequacy of the consideration in a merger— which had previously been omitted. The Supplemental Disclosures provided the 2019-2022 financial projections for ET and 2023-2024 projections for SemGroup, as shown below:

---

*Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 924 (E.D. Pa. 1993). Here, as noted below, courts have denied motions to dismiss and granted preliminary injunctions in actions premised upon the same types of disclosures included in the Supplemental Disclosures. Accordingly, there is no doubt that Plaintiff "had some reasonable hope for success" on their claims, and there is a strong likelihood Plaintiff would have prevailed on the merits of those claims had Defendants failed to moot them.

*Management Financial Forecasts*

In its analysis, Jefferies utilized for comparison purposes certain financial forecasts of SemGroup and Energy Transfer furnished to Jefferies by the respective management of SemGroup and Energy Transfer, set forth below:

Financial forecasts of SemGroup furnished by SemGroup management:

|  | **2019E** | **2020E** | **2021E** | **2022E** | **2023E** | **2024E** |
|---|---|---|---|---|---|---|
|  | ($ in millions) | | | | | |
| Adjusted EBITDA | $ 413 | $ 476 | $ 521 | $ 624 | $ 651 | $ 671 |
| Cash Available for Dividends | $ 142 | $ 152 | $ 170 | $ 219 | $ 230 | $ 253 |

Financial forecasts of Energy Transfer furnished by Energy Transfer management:

|  | **2019E** | **2020E** | **2021E** | **2022E** |
|---|---|---|---|---|
|  | ($ in millions) | | | |
| Consolidated EBITDA | $11,232 | $11,322 | $12,115 | $12,841 |
| Distributable Cash Flow | $6,375 | $6,256 | $6,610 | $7,264 |

*See* JEM Dec., Ex. A at 4.

The omission of these projections rendered the purported summary of the projections in the Proxy misleadingly incomplete, as "it smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision." *Nichting v. DPL Inc.*, 2011 U.S. Dist. LEXIS 76739, at *17 n.16 (S.D. Ohio July 15, 2011). When Defendants filed the Proxy with the SEC, their objective, "unlike poker where a player must conceal his unexposed cards…[was] to put all [their] cards on the table face-up." *See Transgenomic*, 916 F.3d at 1125 (citing *Mendell v. Greenberg*, 927 F.2d 667, 670 (2d Cir. 1990)). Disclosure is even more critical for cash flow projections, which are "among the most highly-prized disclosures by investors" facing a merger decision, because management and financial advisors have "meaningful insight into their firms' futures that the market [does] not." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007); *accord Azar v. Blount Int'l, Inc.*, 2017 U.S. Dist. LEXIS

39493, at *16 (D. Or. Mar. 20, 2017) ("The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making").

Prior to the Supplemental Disclosures, shareholders were unable to evaluate the adequacy of the Exchange Ratio, offered in lieu of more Cash Consideration, as they lacked access to ET's financial forecasts. As a direct result of Plaintiffs' Actions, shareholders gained insight into the projected returns from their new holdings in ET. Likewise, concerning the disclosure for years 2023 to 2024 of the SemGroup projections, shareholders were informed that the Company anticipated tremendous growth, which was previously hidden. As the SemGroup projections were a fundamental input of Jefferies' *Discounted Cash Flow Analysis*, shareholders were also enabled to understand Jefferies' calculations in arriving at the implied equity values of the Company. This information allowed shareholders to understand the consideration being offered, which is why "investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest." *United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998). *See also, e.g., Plato Learning*, 11 A.3d at 1178 (granting injunction for failure to disclose unlevered free cash flows in the proxy in connection with merger); *Karp v. First Conn. Bancorp, Inc.*, 2019 U.S. Dist. LEXIS 162819, 2019 WL 4643799 (D. Md. Sep. 24, 2019) (denying motion to dismiss Section 14(a) claim based on the omission of unlevered free cash flows).

Omissions of this type result in similar fee awards for uncovering these disclosures for shareholders. *See Uzun v. Arris Int. Inc.*, Case No. 18-CV-05555-WMR (N.D. Ga. 2020) (JEM Dec., Ex. D) (awarding $437,500 for the disclosure of cash flows); *See Plato Learning*, 11 A.3d 1175 (JEM Dec., Ex. E) (awarding a $750,000 fee for the disclosure of, among other things, cash flows); *Hamil v. Ambry Genetics Corp.*, No. 2017-0587-AGB, 2019 Del. Ch. LEXIS 584 (Del. Ch. Jan. 9, 2019) (awarding $450,000 for disclosure of projections). Accordingly, curing these

disclosure violations through the Supplemental Disclosures provided SemGroup shareholders with the material information they needed to accurately assess the fairness of the Merger Consideration and so conferred a substantial benefit.

### 2. Jefferies' valuation analyses.

Second, the Supplemental Disclosures provided material information sought by Plaintiffs in connection with Jefferies' *Discounted Cash Flow Analysis*, *Selected Public Companies Analysis*, and *Selected Precedent Transactions Analysis*. *See* JEM Dec., Ex. A at 4-5. Without the assumptions and valuation metrics underlying each of the above-mentioned analyses, SemGroup's shareholders had "nothing other than [Jefferies'] conclusion" of fairness and had no means to assess the merits or weight to be applied in these analyses. *See In re Pure Res. S'Holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002); *see also In re Celera Corp. S'holder Litig.*, No. 6034-VCP, 2012 Del. Ch. LEXIS 66, at *122 (Del. Ch. Mar. 23, 2012), *aff'd in part & rev'd in part*, 59 A.3d 418 (Del. 2012) ("[A] fair summary of a comparable companies or transactions analysis probably should disclose the market multiples derived for the comparable companies or transactions."). In a similar case in Ohio federal court, Monteverde was awarded $425,000 in attorneys' fees for obtaining key inputs related to the banker analysis in support of its fairness opinion. *Solak v. Consolino*, C.A. No. 5:16-cv-02470-SL (N.D. Ohio May 31, 2017) (JEM Dec., Ex. G). Although it was in the context of a settlement, the scope of release was narrow and limited to disclosures and therefore, more similar to a mootness fee scenario. Accordingly, this disclosure obtained by Plaintiffs provided shareholders with a substantial benefit.

### 3. Conflicts of interest.

Finally, the Supplemental Disclosures provided shareholders with material information related to the *Background of the Merger* section of the Proxy, including clarifying information

surrounding the Joint Venture with Party A, details concerning Jefferies' formal outreach to potential counterparties, and the conflicts of interest faced by Jefferies. *See* JEM Dec., Ex. A at 3. When directors "travel[] down the road of partial disclosure of the history leading up to the Merger," the duty of disclosure requires the directors "to provide the stockholders with an accurate, full, and fair characterization of those historic events." *Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1280 (Del. 1994); *Zirn v. VLI Corp.*, Del. Supr., 681 A.2d 1050, 1056 (1996) ("In addition to the traditional duty to disclose all facts material to the proffered transaction, directors are under a fiduciary obligation to avoid misleading partial disclosures. . . . [E]ven a nonmaterial fact can, in some instances, trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.").

The disclosure of this information, along with financial projections and information underlying Jefferies' financial analyses, therefore conferred a substantial benefit to shareholders and allow them to proceed with a fully informed vote on the Merger.

### C.     The Requested Fee Award Is Reasonable

Where, as here, there is no "common fund" out of which attorneys' fees can be awarded, the lodestar method, with an appropriate multiplier, is the proper method to measure a requested fee award. *See, e.g., Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 44 (2d Cir. 2013) (utilizing the lodestar method when there was no common fund); *Amalgamated Clothing*, 54 F.3d at 73 (affirming order awarding fees for enhanced disclosure based on lodestar and multiplier). And in evaluating the reasonableness of the Fee Award, the Court considers the factors adopted by the Second Circuit Court of Appeals from the Fifth Circuit's decision in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Arbor Hill Concerned Citizens Neighborhood*

*Ass'n v. County of Albany*, 493 F.3d 110, 117, n.3 (2d Cir. 2007) (citing the twelve factors set

forth in *Johnson*); *see also In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL 363113,

2009 U.S. Dist. LEXIS 124372, at *22-23 (S.D.N.Y. Nov. 9, 2009) (noting that "in *Arbor Hill*,

the Court of Appeals revivified the criteria enunciated in *Johnson*" and listing the twelve

*Johnson* factors).[9]  Here, application of the relevant *Johnson* factors demonstrates that the

requested Fee Award should be granted in full.

### 1. The time and labor required.

Plaintiffs' Counsel expended in excess of 100 hours of attorney time in prosecuting this

action, including pre-suit investigation; drafting and sending a demand letter to Defendants'

counsel; drafting and filing the Topley Complaint; drafting and filing the Hills Complaint;

drafting a preliminary injunction; reviewing and analyzing the Proxy and drafts of supplemental

disclosures; meeting and conferring with Defendants' counsel; and drafting and filing the instant

motion.[10]  The work performed was necessary to protect the rights of SemGroup shareholders,

and resulted in the Supplemental Disclosures. Further, "the purpose of the fee award is to

compensate the attorney for the reasonable value of services benefiting the . . . claimant."

---

[9]        The *Johnson* factors are: (i) the time and labor required; (ii) the novelty and difficulty of
the question presented by the case; (iii) the skill requisite to perform the legal service properly;
(iv) the preclusion of other employment by the attorneys due to acceptance of the case; (v) the
customary fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations imposed by
the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the
experience, reputation and ability of the attorneys; (x) the undesirability of the case; (xi) the
nature and length of the professional relationship with the client; and (xii) awards in similar
cases. *AOL Time Warner*, 2009 U.S. Dist. LEXIS 124372, at *23.
[10]        "Fees are allowed for fee litigation in a common benefits case because to do so furthers
the purposes served by the allowance of fees on the merits." *Kinney v. International Brotherhood
of Electrical Workers*, 939 F.2d 690, 694 (9th Cir. 1991); *McCafferty v. Local 254, SEIU*, 186
F.3d 52, 62 (1st Cir. 1999) ("The principle is well established that the fee application is a
necessary part of the award of attorney's fees. If the original award is warranted . . . a reasonable
amount should be granted for time spent in applying for the award.").

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ("In granting fees in cases such as this, courts recognize that such awards serve the dual purposes of encouraging representatives to seek redress for injuries caused to public investors and discouraging future misconduct of a similar nature.").

In calculating the lodestar amount, Plaintiffs' Counsel have applied their regular hourly rates, which are reasonable for litigation of this nature and are in line with rates approved by courts within the Second Circuit in securities actions. *See* JEM Dec. Ex. B and C; *see also In re Hi-Crush Partners L.P. Sec. Litig.*, Case No. 12-Civ-8557 (CM), 2014 WL 7323417, 2014 U.S. Dist. LEXIS 177175, at *38-39 (S.D.N.Y. Dec. 19, 2014) (finding the rates billed by lead counsel, which ranged from $425 to $825 per hour, were comparable to peer plaintiffs firms litigating securities actions); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ 7132 (CM), 2014 WL 1883494, 2014 U.S. Dist. LEXIS 64517, at *37-39 (S.D.N.Y. May 9, 2014) (finding Plaintiffs' counsel's rates, which ranged from $640 to $875 for partners and $335 to $665 for other attorneys, reasonable because they were in line with the rates charged by New York firms that defend class actions); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, 2007 U.S. Dist. LEXIS 9450, at * (S.D.N.Y. Feb. 1, 2007) (finding a partner who billed $850 per hour and a senior associate who billed at $515 per hour not inordinate for top-caliber New York law firms); *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*, No. 76 Civ. 2125, 2005 WL 736146, 2005 U.S. Dist. LEXIS 5200, at *35 (S.D.N.Y. Mar. 31, 2005) (noting that "a recent billing survey made by the National Law Journal shows that senior partners in New York City charge as much as $ 750 per hour and junior

partners charge as much as $ 490 per hour") (citing *In Focus: Billing; A Firm-by-Firm Sampling of Billing Rates Nationwide*, NAT'L LAW JOURNAL, December 6, 2004, at 22)).[11]

### 2.   The customary fees in similar cases.

The Supplemental Disclosures include the type of information that has supported an award of attorneys' fees consistent with the Fee Award. Often, Defendants recognize on their own accord, that the supplemental disclosures conferred value to shareholders and so decide to settle. For example, in *Plato Learning*, the Court described the omission of cash flow projections—like those omitted here—as "inexplicable" and enjoined the transaction on that basis, after which defendants in that matter paid $750,000 for the omission. *See Plato Learning*, 11 A.3d at 1178 (JEM Dec., Ex. E); *see also Uzun v. Arris Int. Inc.*, Case No. 18-CV-05555-WMR (N.D. Ga. May 27, 2020) (awarding $437,500 for the disclosure of cash flows) (JEM Dec., Ex. D); *Nichting v. DPL Inc.*, No. 3:11-cv-141, Order and Final J. 7 (S.D. Ohio Feb. 24, 2012) (JEM Dec., Ex. F) ($700,000 fee for disclosure of previously withheld free cash flow projections); *Hamil v. Ambry Genetics Corp.*, No. 2017-0587-AGB, 2019 Del. Ch. LEXIS 584 (Del. Ch. Jan. 9, 2019) (awarding $450,000 for disclosure of projections); *Aron v. Crestwood Midstream Partners LP*, No. 4:15-CV-1367, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016) ($575,000 fee for disclosure of upside case projections).[12]

---

[11]    Plaintiff's Counsel's hourly rates are undoubtedly in line with or less than the rates charged by Defendants' Counsel, which is a relevant consideration.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (noting partnership level billing rates at several defense firms and finding that "[t]he current hourly rates of the partners litigating this action on behalf of the Class, who performed the vast majority of the partner-level work on this matter, range from $700 to $ 750.  Those rates fall within the norm of the rates charged by those attorneys' common adversaries in the defense bar.").

[12]    While these fees were agreed to by the parties, defense counsel undoubtedly sought to protect their client's interests by agreeing to the lowest reasonable fee they determined a court could award in the event the fee issue was litigated.  *See Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, 2013 U.S. Dist. LEXIS 15609, at *48 (N.D. Cal. Feb. 5,

### 3. The skill requisite to perform the legal service properly, the novelty and difficulty of the question presented by the case, the preclusion of other employment, and time limitations imposed by the circumstances.

"[B]ecause of the complexity and societal importance of stockholder and derivative litigation, the most able counsel should be obtained. The attorney's fees awarded should reflect this goal." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 866 (E.D. Mo. 2005); *see also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 172 (S.D.N.Y. 2007) ("[s]ecurities class litigation is notably difficult and notoriously uncertain."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM), 2010 WL 4537550, 2010 U.S. Dist. LEXIS 119702, at *62-63 (S.D.N.Y. Nov. 8, 2010) ("Courts in this circuit have noted, in the past, that securities class actions are generally complex and expensive to prosecute."). In this case, Plaintiffs' Counsel was required to thoroughly and expeditiously review voluminous financial disclosures and proxy statements to assess whether Defendants failed to disclose material information or corrected previously-identified omissions and/or inconsistencies. Thoroughly and properly analyzing complex proxy statements and valuation analyses is time-consuming and often difficult, even for those experienced in doing so, and Counsel demonstrated skill and perseverance in performing the required services.

Moreover, since disclosure deficiencies are best resolved before a shareholder vote,[13] Plaintiffs' Counsel was required to work under time pressure to ensure that the Supplemental Disclosures were filed far enough ahead of the vote for shareholders to digest the new

---

2013) (noting that party agreeing to pay attorneys' fees as part of settlement has one "ultimate objective - paying as little as possible. . .").

[13] *See Nguyen v. Barrett*, C.A. No. 11511-VCG, 2016 Del. Ch. LEXIS 147, at *23 (Del. Ch. Sept. 28, 2016) ("where a plaintiff has a claim, pre-close, that a disclosure is either misleading or incomplete in a way that is material to stockholders, that claim should be brought pre-close, not post-close. . . .  The preferred method for vindicating truly material disclosure claims, is to bring them pre-close, at a time when the Court can insure an informed vote.").

information. Courts have recognized that counsel should not receive a lesser fee for resolving a case quickly because, in many instances, "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002). Finally, Plaintiffs' Counsel are small law firms, and acceptance of this action necessarily precluded them from devoting resources to other cases. *See Denton v. Pennymac Loan Servs., LLC*, 252 F. Supp. 3d 504, 518 (E.D. Va. 2017) (accounting for the fact that counsel "is a small law firm and thus representing a client on a contingent fee or fee-shifting basis necessarily involved loss of other opportunities.").

### 4.  The experience, reputation, and ability of the attorneys.

Despite the firms' small size, Plaintiffs' Counsel have extensive experience in prosecuting shareholder actions, and the firms' attorneys have obtained significant therapeutic benefits and monetary recoveries for shareholders as sole or co-lead counsel in numerous complex class actions across the country.  *See* JEM Dec. Ex. B; Declaration of Guri Ademi ("Ademi Dec."), Exhibit A.

Indeed, the attorneys at Monteverde have been involved in a number of cases recovering substantial amounts of money for shareholders or investors through their litigation efforts, including in the selected list of cases below:

| TARGET COMPANY ACQUIRED | INCREASED CONSIDERATION OR SETTLEMENT FUND |
|---|---|
| Jefferies Group, Inc. (2015) | $70 million |
| Apollo Education (2017) | $54 million |
| EnergySolutions, Inc. (2014) | $36 million |
| American Capital (2018) | $17.5 million |
| Force Protection, Inc. (2012) | $11 million |
| Orchard Enterprises, Inc. (2014) | $10.725 million |
| Hansen Medical (2019) | $7.5 million |
| US Geothermal (pending approval) | $6.5 million |

| Comverge (2017) | $5.9 million |
| ClubCorp (2019) | $5 million |
| Mavenir Systems (2016) | $3 million |
| Syntroleum (2016) | $2.8 million |
| West Marine (2020) | $2.5 million |
| Transgenomic (2020) | $1.95 million |
| MRV Communications (pending approval) | $1.9 million |
| US Geothermal (pending approval) | $6.5 million |

Monteverde also changed the law in a significant victory in *Varjabedian v. Emulex Corp.*, 888 F.3d 399 (9th Cir. 2018), creating a 5 to 1 circuit split that lowered the standard of liability under Section 14(e) of the Exchange Act in the Ninth Circuit. Monteverde then successfully preserved this victory by obtaining dismissal of a writ of certiorari as improvidently granted at the United States Supreme Court. *Emulex Corp. v. Varjabedian*, 139 S. Ct. 1407 (2019).

Notably, Mr. Monteverde, who leads the legal team at Monteverde, has been recognized by Super Lawyers as a Rising Star in Securities Litigation in 2013 and 2017-2019, an award given to less than 2.5% of attorneys in a particular field. Mr. Monteverde has also been selected by Martindale-Hubbell as a 2017-2019 Top Rated Lawyer. Moreover, the attorneys at Monteverde regularly speak and/or write articles to educate the legal community regarding Securities and M&A class action litigation.

The attorneys at Ademi & O'Reilly have likewise been involved in a number of cases recovering substantial amounts of money for public shareholders and investors throughout the country, as well as numerous complex multidistrict antitrust and consumer protection litigation. In light thereof, Mr. Ademi has been recognized in Wisconsin Super Lawyers.

The cases referenced above reflect just a few of Plaintiffs' Counsel's important achievements in the area of transactional and shareholder rights litigation and demonstrate that Plaintiffs' Counsel's experience, reputation, and ability entitle them to the Fee Award.

### 5. A reasonable multiplier is appropriate because Plaintiffs' Counsel undertook representation on a contingent basis.

Plaintiffs' Counsel respectfully submit that, consistent with the *Johnson* factors, a reasonable multiplier of 5.25x is also appropriate in this case. "After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier. The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Schering-Plough/Merck Transaction*, 2010 U.S. Dist. LEXIS 29121, at *55.

The Court should give considerable weight to the fact that Plaintiffs' Counsel undertook representation on a contingency basis.[14] *See City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, 2014 U.S. Dist. LEXIS 64517, at *39 ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award."). As the Fourth Circuit long ago recognized:

> The contingency of compensation . . . is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

*McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967). The significance placed on the contingent nature of a fee has been reaffirmed in this Circuit on numerous occasions. Indeed, in *Fleisher v. Phoenix Life Ins. Co.*, this Court emphasized the importance of this factor. No. 11-cv-8405 (CM), 2015 WL 10847814, 2015 U.S. Dist. LEXIS 121574, at *44-45, *59-60, *69-70

---

[14]   Factor 10, the undesirability of the action, is relevant only to the extent that the contingency element of this action represents excessive risk for many firms. Additionally, factor 11, the nature and length of the professional relationship with the client, is not relevant in this case, as the litigation centered on a definitive proxy statement filed on October 30, 2019.

(S.D.N.Y. Sept. 9, 2015). As the Court explained in holding that a lodestar multiplier of 4.87 was reasonable and within the normal range of multipliers in this circuit, "under the lodestar method of fee computation, a multiplier is typically applied to the lodestar. The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id*. at \*60 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.") (quoting *Detroit v. Grinnell Corp*., 495 F.2d 448, 470 (2d Cir.1974)); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318 HB, 2001 WL 709262, 2001 U.S. Dist. LEXIS 8418, at \*24 (S.D.N.Y. June 22, 2001) ("Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys fees.").

Moreover, courts in the Second Circuit commonly find multipliers equal to or above the multiple implied by Fee Award reasonable. *See In re Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("it clearly appears that the modest multiplier of 4.65 is fair and reasonable"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.") (collecting cases); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, 2007 U.S. Dist. LEXIS 57918, at \*56 n.7 (S.D.N.Y. July 27, 2007) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.").

In this case, the Court should give considerable weight to the fact that Plaintiffs' Counsel undertook representation on a contingency fee basis on behalf of relatively small shareholder

who would have been unable to pay for experienced counsel to protect their corporate suffrage rights and investigate the fairness of the Transaction. Plaintiffs' Counsel expeditiously fought for, and succeeded in procuring, informed corporate suffrage for Plaintiffs and all other SemGroup shareholders under time-pressure and intense opposition from Defendants. Plaintiffs' Counsel risked receiving nothing for their work had they been unable to procure the material Supplemental Disclosures.

## IV.    THE FEE AWARD IS ALSO SUPPORTED UNDER STATE LAW

SemGroup is incorporated in Delaware, Plaintiffs' Counsel, therefore, are entitled to an award of attorneys' fees and expenses under Delaware law for conferring the substantial benefit on SemGroup shareholders. *See Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) ("a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees."); *United Vanguard Fund, Inc. v. TakeCare, Inc.,* 693 A.2d 1076, 1079 (Del. 1997) ("*Takecare I*"); *see also Amalgamated Clothing*, 54 F.3d at 71 ("litigation that enhances [corporate] suffrage benefits all those eligible to vote.").

Plaintiffs' entitlement to an award of attorneys' fees in a mooted action under the "common corporate benefit" doctrine includes common benefits conferred upon an ascertainable stockholder class, whether those benefits take the form of monetary benefits or therapeutic benefits such as enhanced corporate suffrage. *Tandycrafts*, 562 A.2d at 1165; *Cal-Maine Foods, Inc. v. Pyles*, 858 A.2d 927, 928-29 (Del. 2004); *Takecare I*.  Specifically, Plaintiffs are entitled to a fee under the common benefit doctrine if it is established that: (1) the suit was meritorious when filed; (2) the action producing the benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (3) the resulting corporate benefit was causally related to the lawsuit.  *See, e.g.*, *Cal-Maine,* 858 A.2d at 929; *Louisiana State Employees'*

*Retirement System v. Citrix Systems, Inc.*, Dkt. No. CIV.A. 18298, 2001 Del. Ch. LEXIS 115 (Del. Ch. Sept. 17, 2001). As discussed above, Plaintiffs have fully met those requirements.

Furthermore, is well-settled under Delaware law that an award of attorneys' fees and expenses is appropriate when counsel's litigation efforts achieve beneficial supplemental disclosures that enable stockholders to better assess the fairness of a merger. When a plaintiff "generates benefits for the corporation or its stockholders, Delaware law calls for an award of attorneys' fees and expenses . . . ." *In re Del Monte Foods Co. S'holders Litig.*, No. 6027-VCL, 2011 WL 1677458, 2011 Del. Ch. LEXIS 94, at *26, *35-36 (Del. Ch. June 27, 2011) (finding disclosures related to the projections banker derived and other valuation inputs warranted fee award of $350,000 to $500,000; noting that courts "often award fees of approximately $400,000 to $500,000 for one or two meaningful disclosures…" and lower awards for disclosures of more "questionable quality"); *id.* at *33 ("[a]wards for supplemental disclosures about banker analyses and relationships cluster around $400,000 to $500,000.")).

Furthermore, in the mootness context, "a fee can be awarded if the disclosure provides some benefit to stockholders, whether or not material to the vote. In other words, a helpful disclosure may support a fee award in this context." *In re Xoom Corp. Stockholder Litig.*, No. 11263-VCG, 2016 WL 4146425, 2016 Del. Ch. LEXIS 117, at *10 (Del. Ch. Aug. 4, 2016) (awarding $50,000); *see also In re Golden State Bancorp Inc. Shareholders Litig.*, No. 16175, 2000 WL 62964, 2000 Del. Ch. LEXIS 8, at *8 (Del. Ch. Jan. 7. 2000) (awarding fee of $500,000 and holding "it is enough that a reasonable [] stockholder might have considered the additional financials . . . of some interest in deciding how to vote.").

In fact, the type of disclosures at issue in this case (i.e., financial projections, an advisors' financial analyses, and potential conflicts of interest) have been repeatedly recognized as

important disclosures that justify substantial counsel fee awards. Indeed, the Delaware Court of Chancery has explained that it has "often awarded fees of approximately $400,000 to $500,000 for one or two meaningful disclosures, such as previously withheld projections or undisclosed conflicts faced by fiduciaries or other advisors." *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1136-37 (Del. Ch. 2011).  As discussed above in significant detail, Plaintiffs secured the disclosure and dissemination of beneficial Supplemental Disclosures that enabled SemGroup stockholders to cast an informed vote. Accordingly, Plaintiffs' Counsel are entitled to the requested Fee Award.

## V.     CONCLUSION

For these reasons, Plaintiffs respectfully requests that the Court grant the Fee Award.

Dated: July 16, 2020

**OF COUNSEL:**

**ADEMI & O'REILLY, LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
         jfruchter@ademilaw.com

*Attorneys for Plaintiff Topley*

Respectfully submitted,

/s/ Juan E.  Monteverde
Juan E. Monteverde (JM-8169)

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
         mschreiner@monteverdelaw.com

*Attorneys for Plaintiffs Topley and Hills*